UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CHRISTOPHER JOHN ROELKE, ET AL., <br><br>　　Plaintiff, <br><br>　　v. <br><br>ZACHARY ZELTZER, ET AL. <br><br>　　Defendants. | Civil No. 22-1426 (ADC) |

# OPINION AND ORDER

Before the Court is a motion for summary judgment, as well as an accompanying statement of uncontested material facts ("SUMF"), filed by defendants Zachary Zeltzer, Lauren Zeltzer ("Zeltzers"), their conjugal partnership, and Universal Insurance Company (each one individually, "defendant," and together "defendants") on March 28, 2025. **ECF Nos. 74, 74-1, 74-7**. Plaintiffs Christopher John Roelke, Karin Eriko Roelke ("Roelkes"), and their conjugal partnership (each one individually, "plaintiff," together, "plaintiffs," and with the defendants, the "parties") filed a response in opposition on April 25, 2025, with an accompanying opposing statement of uncontested material facts ("OSUMF") and an additional statement of uncontested material facts ("ASUMF"). **ECF Nos. 78, 78-1, 78-2**. Defendants filed a reply on February 24, 2025, with an accompanying reply to the ASUMF ("RASUMF"). **ECF Nos. 83, 83-3, 83-4**.

For the reasons set forth below, the defendant's motion for summary judgment is **GRANTED** and plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

## I. Procedural Background

Plaintiffs' complaint centers on an incident between the Zeltzers' son, Z.Z., and the Roelkes' daughter, T.R., both of whom were seven years old at the time of the incident. *See* **ECF No. 30**, ¶¶ 1, 3. Plaintiffs allege that, during the celebrations of defendants' May 15, 2020 vow renewal ceremony, Z.Z. injured T.R. with a kids' golf putter. *See id.*, ¶¶ 15, 24**.** The incident occurred in the backyard of the Zeltzer's Dorado residence, where they had a mini golf putting green, and where the children of the adult vow renewal attendees were playing together. *Id.*, ¶¶ 17, 20. This area was adjacent to a white tent where the vow renewal celebrations took place. *Id.*, ¶ 17. Neither the Zeltzer nor Roelke parents witnessed the occurrence of the incident in question. *See id.*, ¶¶ 21-22, 24. Christopher Roelke discovered the occurrence of the incident when he went to the backyard, found T.R. crying, and heard from Z.Z. that he had unintentionally hit T.R. with the putter. *Id.*, ¶¶ 23-24.

The Roelkes sought medical treatment for T.R. after the incident. **ECF No. 30**, ¶¶ 27-29. Plaintiffs allege that the incident has resulted in long-lasting medical consequences for their daughter and personal complications for their family. *Id.*, ¶¶ 29-37. Plaintiffs claim that T.R. has suffered from "various pains and consequences associated with the accident," including:

> [P]ost-concussion syndrome and other conditions to include: neck pain; trauma to the brain; [c]hronic post traumatic headaches; visual changes; hypoesthesia of the skin; feeling mentally foggy; difficulty remembering; difficulty in concentration; sleeping disorders (difficulty falling asleep and insomnia); irritability; sadness; nervousness; balance problems; fatigue; nausea; stress; anger; dizziness; giddiness;

vision problems and visual disturbances; sensitivity to noise; sensitivity to light and drowsiness.

*Id.*, ¶¶ 31, 33. Additionally, plaintiffs allege that T.R. suffers from "PTSD," "feels sad and depressed" and "no longer enjoys various activities and pleasures of life that she was able to enjoy . . . prior to the accident." *Id.*, ¶ 37. Plaintiffs claim $5 million in damages for T.R.'s injury. *Id.*, ¶ 38. Plaintiffs claim an additional $1 million for Christopher Roelke's damages related to the incident, including "stress and strain to the marital relationship with his wife" and "mental anguish." *Id.*, ¶ 46. As to Karin Roelke, plaintiffs claim $1 million in damages for stress, "devot[ion of] additional time to her daughter TR" and "mental anguish." *Id.*, ¶¶ 53-54. Plaintiffs also claim $3 million for "past, present and future medical expenses" for T.R., $2 million for "additional economical damages suffered by the Roelke conjugal society," and $300,000 for "future debts and liens, assessment and litigation expense." *Id.*, ¶¶ 56-58. Plaintiffs voluntarily dismissed their damages claims for lost income. **ECF Nos. 68, 77**.

On October 24, 2022, defendants answered the complaint. **ECF No. 7**. Plaintiffs filed an amended complaint on November 27, 2023, **ECF No. 30**, to which defendants again filed answers. *See* **ECF No. 32** (Zeltzers' Answer); **ECF No. 36** (Universal Insurance Company Answer); **ECF No. 37** (Cincinnati Insurance Company Answer).

Throughout the years 2023 and 2024, the parties conducted discovery. On March 28, 2025, defendants filed a motion for summary judgment and an SUMF. **ECF Nos. 74, 74-1, 74-7**.

Plaintiffs responded on April 25, 2025, and submitted an OSUMF. **ECF Nos. 78, 78-1, 78-2**. Defendants replied on May 19, 2025, and submitted an ROSUMF. **ECF Nos. 83, 83-3, 83-4**.

## II.     Legal Standard

Through summary judgment, courts "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). A court may grant summary judgment only when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Sands v. Ridefilm Corp.*, 212 F.3d 657, 660 (1st Cir. 2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and it is "material" if it potentially affects the outcome of the case. *See Calero-Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir. 2004); *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83 (1st Cir. 2016) (citations omitted); Fed. R. Civ. P. 56(a).

Although the court states the facts in the light most favorable to the party against whom summary judgment is entered, the court is still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted). The court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." *Reeves v. Anderson Plumbing Productions Inc.*, 530 U.S. 133, 135 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, not of a judge. *See id.* Thus, to prevail at the summary judgment

stage, defendants must demonstrate that, even admitting well-pleaded allegations in the light most favorable to plaintiffs, the applicable law compels a judgment in their favor.

In evaluating a negligence case at the summary judgment stage, "a court should be cautious in using the summary judgment device to dispose of such cases" because "determinations of foreseeability and of whether a defendant acted reasonably fall within the province of the jury." *Chapman v. E.S.J. Towers, Inc.*, 803 F. Supp. 571, 573 (D.P.R. 1992). Indeed, "[n]ot only ordinary fact questions, but also evaluative applications of legal standards (such as the legal concept of foreseeability) to the facts are properly jury questions. In any case where there might be reasonable difference of opinion as to evaluative determinations . . . the question is one for the jury." *Springer v. Seaman*, 821 F.2d 871, 876 (1st Cir. 1987), *abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) (citation modified). Yet the question of foreseeability is not always a jury question, particularly if "the evidence [is] such that the factfinder rationally can conclude that the risk complained of is among the universe of risks recognizable by reasonably prudent persons acting with due diligence under the same or similar circumstances." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995). But "when the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 937 (1st Cir.1987)).

III.   Discussion

   A.   **Uncontested Material Facts**

   The Court draws the following factual findings from the parties' admissions on the record and the statements of proposed facts submitted by the parties that comply with L. Civ. R. 56. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Per L. Civ. R. 56(e), "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." The nonmoving party is required to demonstrate "through submissions of evidentiary quality that a trial worthy issue persists." *Iverson v. City of Boston*, 452 F.3d 94, 108 (1st Cir. 2006). If any fact is not supported by "a citation to the specific page or paragraph of identified record material supporting the assertion," the court may "disregard" the unsupported statement. *Quintana-Dieppa v. Dep't of Army*, 130 F.4th 1, 8 (1st Cir. 2025) (citing L. Civ. R. 56(c)). Where a supported fact is not properly controverted, it "shall be deemed admitted." *Id*. Litigants thus ignore Local Rule 56(c) at their peril. *See López-Hernández*, 64 F.4th at 26.

   While the Court reviewed every statement submitted by the parties, it only includes in this Opinion & Order those facts that are material and uncontested for purposes of summary judgment as mandated by Fed. R. Civ. P. 56, the uncontested material facts ("UMF"). The Court notes that plaintiffs attempted to controvert their own, on-the-record admissions in the OSUMF. Yet these objections were frequently unsupported by citations to any evidence that indeed controverted the SUMF or raised a genuine issue of material fact. *See, e.g.*, OSUMF ¶¶ 9, 10, 12,

17-19, 24-25, 28, 41, 43, 44, 46, 51, 52, 54.[1] The Court finds the following facts are material and undisputed.

1. Plaintiffs Karin Eriko Roelke and Christopher Roelke have children, one of whom is T.R. SUMF ¶¶ 1-2; OSUMF ¶¶ 1-2.

2. Defendants Lauren Zeltzer and Zachary Zeltzer have children, one of whom is Z.Z. SUMF ¶ 4; OSUMF ¶ 4.

3. On May 15, 2020, both Z.Z. and T.R. were seven years old. SUMF ¶ 5; OSUMF ¶ 5.

4. Plaintiff Karin Roelke, T.R., and the other Roelke children attended multiple playdates at defendants' residence prior to May 15, 2020. SUMF ¶ 8; OSUMF ¶ 8.

5. During these playdates, the Roelke children played throughout the defendants' home and backyard, including on the mini golf putting green in the backyard. SUMF ¶ 9; OSUMF ¶ 9.

6. During these playdates, the children's parents, their nannies, or both were present. OSUMF ¶ 9; ASUMF ¶ 1; RASUMF ¶ 1.

7. The accessories for the mini golf putting green included kids' putters, which were a smaller size than standard golf putters, lightweight, and made of aluminum or rubber. SUMF ¶ 10; OSUMF ¶ 10.

---

[1] Defendants moved to strike two photographs, **ECF No. 79-6**, Ex. F, and an expert report, **ECF No. 79-7**, Ex. G, submitted in support of plaintiffs' summary judgment opposition. **ECF No. 82**. Plaintiffs did not oppose this motion. The Court did not find the evidence in question raised any genuine issue of material fact, and in light of the foregoing opinion, the motion to strike is **MOOT**.

8. The children played on the mini golf putting green with the kids' putters during these playdates without incident or injury. SUMF ¶ 18; OSUMF ¶ 18.

9. Plaintiff Karin Roelke admitted that during these playdates, the children used the kids' putters without malicious or mischievous intent. SUMF ¶ 20, OSUMF ¶ 20.

10. At times during these playdates, plaintiffs' 15-month-old son, while supervised by Karin Roelke, played on the mini golf putting green with the kids' putter. SUMF ¶ 19; OSUMF ¶ 19.

11. Plaintiff Christophe Roelke does not find mini golf to be an inherently dangerous activity. ASUMF ¶ 14; RASUMF ¶ 14.

12. On May 15, 2020, plaintiffs and their children attended the defendants' vow renewal celebrations at defendants' residence in Dorado. SUMF ¶ 11; OSUMF ¶ 11.

13. The celebrations were held in a tent with window panels in the backyard of defendants' residence, next to and with visibility of the mini golf putting green. SUMF ¶ 12; OSUMF ¶ 12; **ECF No. 83-2** (Ex. B).

14. When plaintiffs arrived at defendant's Dorado residence for celebrations, their daughter T.R. went to the backyard while plaintiffs remained in their golf cart with the babysitter and their other children. SUMF ¶ 15; OSUMF ¶ 15.

15. In the backyard, T.R. proceeded to play with other children at the mini golf putting green. SUMF ¶ 16; OSUMF ¶ 16.

16. Z.Z. was playing on the mini golf putting green, swinging one of the kids' putters to put the ball in the hole, and looking toward the hole on the green, when T.R. approached him from the side to tell him something, and was struck in the head with the putter. SUMF ¶¶ 23-24; OSUMF ¶¶ 23-24; Deposition of T.R. ("T.R. Dep."), **ECF No 74-**6, Ex. E, at 35:13-24.

17. Z.Z. didn't see T.R. approaching him, struck her by accident, and apologized after the accident occurred. SUMF ¶¶ 25-26; OSUMF ¶ 25.

18. When T.R's father, Christopher Roelke, arrived at the mini golf putting green after the incident, he had the impression that Z.Z. was swinging the golf club aggressively, like a samurai sword. ASUMF ¶ 5; RASUMF ¶ 5.

19. Defendant Lauren Zeltzer and other adults were in the tent while the children were playing on the mini golf putting green. SUMF ¶ 28; OSUMF ¶ 28.

20. Plaintiff Christopher Roelke admitted that the accident of Z.Z. hitting T.R. with the putter was not foreseeable. SUMF ¶ 54; OSUMF ¶ 54.

21. Plaintiff Christopher Roelke admitted that a golf putter, on the ground, poses no threat. SUMF ¶ 12; OSUMF ¶ 12.

22. Defendant Lauren Zeltzer described Z.Z. as not aggressive and well-behaved, and T.R. found Z.Z. to be a "nice kid" who treated her well. SUMF ¶¶ 41-42; OSUMF ¶¶ 41-42.

23. Z.Z. never displayed aggressive or violent behavior toward other children.

SUMF ¶¶ 43-44; OSUMF ¶¶ 43-44.

24. Plaintiff Karin Roelke found that defendants were responsible, trustworthy parents who provided their children with a proper education and environment. SUMF ¶¶ 50-51; OSUMF ¶¶ 50-51.

25. Plaintiff Karin Roelke found that defendants did not allow their children to act violently or intentionally harm others, and she believed that defendants acted prudently and reasonably with their children. SUMF ¶ 52; OSUMF ¶ 52.

**B.     Summary Judgment: Plaintiffs Fail to Make Out Either an Article 1802 or Article 1803 Negligence Claim**

Plaintiffs allege that defendants are liable for negligence under both Articles 1802 and 1803 of the Puerto Rico Civil Code.[2] Plaintiffs fail, however, to set forth a case of negligence under Article 1802, and defendants have rebutted the *juris tantum* presumption of fault under Article 1803. For the reasons set forth below, the Court **GRANTS** summary judgment as to both the Article 1802 and Article 1803 claims.

---

[2] The current version of the Puerto Rico Civil Code, Act No. 55 of June 1, 2020, codified as 31 L.P.R.A. § 5311 *et seq.*, entered into force on November 28, 2020, repealing the previous 1930 Code. *See Rivera-Rosario v. LSREF2 Island Holdings, Ltd., Inc.*, 79 F.4th 1, 5 n. 1 (1st Cir. 2023). The current version of the Puerto Rico Civil Code has yet to be officially translated into English. In any case, the current general tort statute, Article 1536, 31 L.P.R.A § 10801, is textually identical to the previous version, and because the incident took place on May 15, 2020, the 1930 Code applies. *See* Article 1815, Puerto Rico Civil Code (2020), 31 L.P.R.A. § 11720 (providing that, in the context of tort claims, if one or more act or omission occurred before the entry into force of the 2020 Code but others occurred afterwards, the prior version of the Code will apply).

   *1.     Plaintiffs' Article 1802 Claim Fails as a Matter of Law*

Plaintiffs' first theory of liability under Article 1802 is that of direct liability, claiming that defendants "as owners of the property and hosts of the after party, owed a duty of care towards their invited guests, and . . . a foreseeable dangerous condition was present in the area where the accident occurred." **ECF No. 78**, ¶ 6. Although defendants fail to specifically address plaintiffs' Article 1802 claim in their motion for summary judgment, *see* **ECF Nos. 74, 74-7**, their reply brief argues that they cannot be held liable under Article 1802 because the alleged harm was not reasonably foreseeable. **ECF No. 83-4**, at 3.[3]

To establish liability under Article 1802 and survive summary judgment, plaintiffs must set forth facts proving: (1) actual damage, namely a physical or emotional injury; (2) negligence, or the breach of a duty; and (3) a causal link between the fault and the negligence. *Horowitz v. Luxury Hotels Int'l of Puerto Rico Inc.*, 322 F. Supp. 3d 279, 283-84 (D.P.R. 2018). The duty of care entails "anticipating reasonably probable injuries to probable victims." *Irvine v. Murad Skin Research Laboratories, Inc.*, 194 F.3d 313, 322 (1st Cir. 1999). "A person breaches the duty of reasonable care when his actions create reasonably foreseeable risks. A plaintiff, then, must show the foreseeable risks created by defendant's acts or omissions in order to carry his burden as to the element of a tort claim." *Vázquez-Filippetti*, 504 F.3d 43, 49 (1st Cir. 2007). To be liable

---

[3] It is clear that defendants' summary judgment motion seeks dismissal of the negligence claims in full, as the motion requests "that this Court grant this Motion for Summary Judgment and dismiss plaintiffs' Complaint with prejudice under Fed. R. Civ. P. 56." **ECF No. 74**, at 3; **ECF No. 74-7**, at 13 (requesting dismissal of "plaintiffs' claims in their entirety").

for negligence, a person need not foresee the *specific* consequences that resulted from an act or omission, but need only foresee the *general class* of consequences that, in a normal person's experience, would flow from such an act or omission. *Estremera v. Inmobiliaria Rac, Inc.*, 109 P.R. Dec. 852, 1155-56 (1980). As to the specific duty at issue here, defendants, as property owners, owed guests "care not to injure [them] by negligent activity, and must also . . . [have] warn[ed] [them] of latent perils actually known to the occupier." *Weber v. Mejías*, 85 P.R. Dec. 76, 79 (P.R. 1962).

The uncontested material facts fail to set forth a case for defendants' liability for negligence under Article 1802. Plaintiffs, at the outset, have demonstrated that T.R. was physically injured. UMF ¶¶ 16-17. Yet they fail to fulfil the second, and thereby also the third, prongs of their Article 1802 claim. Plaintiffs were plainly aware of the existence of both the mini golf putting green and its accessories, including the kids' putters, at defendants' home prior to attending the vow renewal celebrations. *Id.*, ¶¶ 4-5, 7-9. Plaintiffs' children had played with defendants' children on the green and used its accessories on several occasions prior to the day of the event without any incident or injury. *Id*. In fact, at times during these playdates, plaintiffs' 15-month-old son, while supervised by plaintiff Karin Roelke, played on the green with the kids' putter. *Id.*, ¶ 10. Plaintiff Christopher Roelke, in his deposition, admitted that "[a] putter by itself,

for example, on the ground, poses no threat." Deposition of Christopher John Roelke ("C. Roelke Dep."), **ECF No. 79-2**, Ex. B, at 68:3-4.[4]

The mini golf putting green and its accessory kids' putters were clearly not a "latent peril[]" of which defendants failed to warn plaintiffs, and it was not reasonably foreseeable, based on the multiple past playdates between plaintiffs' and defendants' children at the defendants' residence, that it would be hazardous on the evening of May 15, 2020. *See Weber*, 85 P.R. Dec. 72; UMF ¶¶ 4-5, 8-10. No reasonable juror could find otherwise. Defendants did not breach their duty to plaintiffs, and since the accident was not reasonably foreseeable, defendants cannot be negligent under Article 1802. Thus, plaintiffs' claims as to defendants' direct liability fail as a matter of law.

        *2.     Defendants Rebut the Article 1803* Juris Tantum *Presumption of Fault*

The second theory of liability plaintiffs expound is that of defendants' vicarious liability under Article 1803 for failure to provide "supervision or vigilance to their son," as well as failure to provide their son "with the proper education, instruction and discipline required to play the game of golf and how to use correctly a metal golf putter." **ECF No 78**, ¶ 7. Defendants counter that the "uncontested evidence shows that adults, including the defendants—were in and

---

[4] The Court notes that plaintiffs' attorney objected to the form of the question here. C. Roelke Dep., **ECF No. 79-2**, Ex. B, at 687:25. Yet the plaintiffs do not reiterate this objection in response to defendants' SUMF including this admission. OSUMF ¶ 12. Instead, plaintiffs allege that the statement is "inadmissible under Rule 701 of the Federal Rules of Evidence, because plaintiff is not testifying as an expert. . . ." The Court disagrees that plaintiff's opinion is one that would be within the purview of an expert. While plaintiff's opinion indeed may involve an "ultimate" issue, this still does not make it inadmissible, and therefore the Court will consider it as part of the summary judgment evidence. *See* Fed. R. Civ. P. 56(2); Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue.").

around the backyard area during the relevant time, providing general supervision," **ECF No. 83-4**, at 6, and that the children were engaged in "ordinary, age-appropriate recreational activities" for which harm could not have been foreseen. *Id.*, at 7.

Under Article 1803, parents are vicariously liable for the acts of the minor children who live with them. Article 1803 establishes a *juris tantum* presumption of fault against parents, which shifts the burden to the parents to prove they were not guilty of negligence. *Álvarez v. Irizarry*, 80 P.R. Dec. 63 (P.R. 1957), **ECF No. 85-3** (cert. trans.), at 3. Parents may overcome the *juris tantum* presumption of negligence by demonstrating they acted as reasonably prudent parents. Although the parties provided limited Puerto Rico case law on the Article 1803 standard in analogous contexts, the Court finds the case of *Cruz v. Rivera*, 73 P.R. Dec. 682, **ECF No. 85-2** (cert. trans.), an instructive and accurate analogue for the case at bar.

*Rivera* held that the parents of a twelve-year-old child, who shoved a classmate at school (the classmate subsequently fell, "carrying along with him the desk of the plaintiff minor who fell to the floor" and fractured her arm) were not liable for negligence under Article 1803. *Rivera*, 73 P.R. Dec. 682 (P.R. 1952), **ECF No. 85-2** (cert. trans.), at 3. The Court reasoned that, because the accident occurred in the course of ordinary childhood play, the child's parents had provided her with adequate education, supervision, and discipline, and the child did not act with the intent to injure, the parents were not negligent. *Id.*, at 5-6. The case sets forth the duty of a reasonably prudent parent in detail, explaining that the duty requires "watch[ing], reprimand[ing], disciplin[ing] and educat[ing]" children, and "provid[ing] them with proper

education and environment." *Rivera*, 73 P.R. Dec. 682 (P.R. 1952), **ECF No. 85-2** (cert. trans.), at 3, 5; *Álvarez*, 80 P.R. Dec. 63, **ECF No. 85-3** (cert. trans.), at 3. Parents' "duty to watch . . . is related to the duty of foreseeing risks which, in its turn, depends on the degree of danger involved in the conduct." *Rivera*, 73 P.R. Dec. 682 (P.R. 1952), **ECF No. 85-2** (cert. trans.), at 5. This duty does not require that parents prevent common accidents arising from non-dangerous childhood play, including play where "children habitually used [accessories like a slingshot] in a manner which was neither malicious nor mischievous and . . . damage [is] purely accidental." *Rivera*, 73 P.R. Dec. 682, **ECF No. 85-2** (cert. trans.), at 5. A "common act between children, which involve[s] no danger by itself and which rather result[s] in an unfortunate accident" is not preventable "[n]o matter how active or effective the prior vigilance might have been, and no matter how adequate the education in the home [might have] been. . . ." *Rivera*, **ECF No. 85-2** (cert. trans.), at 5. Moreover, "parents should not be held liable on the basis of an alleged act of assault and battery on the part of a minor child who lives with them when the evidence and the facts do not show that [the child] acted with the intent to injure." *Id*, at 6.

   Defendants have set forth a series of undisputed material facts – most of which are based on plaintiffs' own admissions during depositions – confirming that under Puerto Rico tort law standards, defendants have rebutted the *juris tantum* presumption of fault. The Court has not made any credibility determinations, weighed the evidence, or drawn any inferences from the facts in making this determination. *Reeves*, 530 U.S. 133, 135. Plaintiffs' own evidence and admissions support the finding that defendants are not liable under Article 1803, and no

reasonable difference of opinion could exist as to whether they were negligent. *See Springer v. Seaman*, 821 F.2d 871, 876 (1st Cir. 1987),

At the outset, defendants provide clear evidence that they adequately educated, supervised, and disciplined Z.Z. Although plaintiffs argue that defendants "failed to provide their son, Z.Z., with the proper education, instruction and discipline required to play the game of golf and how to use correctly a metal golf putter," this myopic focus on golf education misses the mark for the kind of education Article 1803 requires. **ECF No 78**, at 3. The standard asks whether parents generally "watch[ed], reprimand[ed], discipline[d] and educate[d]" their children and "provid[ed] them with proper education and environment," not whether parents educated their children on the specific way to avoid an accident in the course of ordinary childhood play. *Rivera*, 73 P.R. Dec. 682 (P.R. 1952), **ECF No. 85-2** (cert. trans.), at 3, 5. When plaintiff Karin Roelke was asked at her deposition whether the defendants were "trustworthy people," a "responsible mother . . . [and] father," and whether they had "provided their children with a proper education and environment," she answered "yes" to each of these questions. Deposition of Karin Eriko Roelke ("K. Roelke Dep."), **ECF No. 74-2**, Ex. A, at 58:10-21; UMF ¶ 24. Plaintiff Christopher Roelke also agreed that "[i]t appeared so" that defendants had "provided their children with a proper education and environment." C. Roelke Dep., **ECF No. 79-2**, Ex. B, at 56:14-16; UMF ¶ 24. When asked whether it was accurate that defendants would "not allow their children to act violently or intentionally harm others," plaintiff Karin Roelke answered that was "[c]orrect." K. Roelke Dep., **ECF No. 74-2**, Ex. A, at 59:13; UMF ¶ 25.

Additionally, when asked whether Z.Z. had ever "showed violent or aggressive behavior towards [plaintiffs'] children," she answered "[n]o." K. Roelke Dep., **ECF No. 74-2**, Ex. A, at 70:8-10; UMF ¶ 22. Christopher Roelke, too, when asked whether Z.Z. had prior to this incident "caused physical harm" to his children or other children answered "[n]ot that I'm aware of." C. Roelke Dep., **ECF No. 74-3**, Ex. B, at 72:4-11; UMF ¶ 23. When Z.Z.'s mother was asked whether, when Z.Z. "was seven years old, was he an aggressive kid," answered "[n]o." Deposition of Lauren Zeltzer, **ECF No. 74-4**, Ex. C, at 34:1-3; UMF ¶ 22. Even T.R. testified that, "yes," she found Z.Z. to be a "nice kid" who "treated [her] well." **ECF No. 74-6**, Ex. E, at 20:11-14; UMF ¶ 22.

Although plaintiffs also argue that, on the evening of the incident, defendants' supervision of the children at their home was insufficient and that the accident was foreseeable, **ECF No. 78**, at 15-16, plaintiffs' own admissions again undercut this argument. Puerto Rico law is clear that parents' "duty to watch . . . is related to the duty of foreseeing risks which, in its turn, depends on the degree of danger involved in the conduct." *Rivera*, 73 P.R. Dec. 682 (P.R. 1952), **ECF No. 85-2** (cert. trans.), at 5. This duty does not require that parents prevent common accidents arising from non-dangerous childhood play, particularly where the children do not use the accessories involved in such play with malicious or mischievous intent. *Id.*, at 5. Prior to the evening of the incident, plaintiff Karin Roelke testified that it was "[c]orrect" that her children had attended "multiple playdates with the Zeltzers without any incident or injury" and that "they [had] used the golf putter in a manner that was neither malicious nor mischievous"

Case 3:22-cv-01426-ADC-HRV    Document 94    Filed 03/04/26    Page 18 of 20

Civil No. 22-1426 (ADC)                                                                                    Page 18

on the "one time [she could] remember." K. Roelke Dep., **ECF No. 74-2**, Ex. A, at 55:13-16; UMF ¶¶ 4-5, 7-10. During one of these playdates, plaintiff Karin Roelke even allowed her 15-month-old son, while she supervised, to play on the green with the kids' putter. UMF ¶ 9. More so, plaintiff Christopher Roelke admitted that mini golf, when played appropriately, was not an inherently dangerous activity, and when asked whether he thought "it was foreseeable that Z.Z. [would] hit T.R." with a putter, definitively stated "[n]o . . . I wasn't anticipating that." C. Roelke Dep., **ECF No. 74-4**, Ex. C, at 73:25-74:5; UMF ¶ 20.[5] On the evening of the incident, the children were playing together, as they had on numerous prior occasions, while defendant Lauren Zeltzer and other adults were in a large tent with window panels next to and with visibility of the mini golf putting green, providing the children with general supervision. UMF ¶¶ 4-5, 7-10, 13, 19.

The uncontested material facts demonstrate that the incident was an accident that occurred during non-dangerous childhood play while Z.Z. was using the kids' putter in a manner that "was neither malicious nor mischievous." *Rivera*, 73 P.R. Dec. 682, **ECF No. 85-2** (cert. trans.), at 5; UMF ¶¶ 9, 15-17. T.R. testified that, on the evening of the incident, she "was trying to . . . tell [Z.Z.] something" while he "was completing his swing or . . . trying to . . . start his swing," and as she was approaching him "diagonally and . . . to the side . . . he hit [her]."

---

[5] The Court notes again that plaintiffs' attorney objected to the form of the question here. C. Roelke Dep., **ECF No. 74-4**, Ex. C, at 74:3. Yet here, too, the plaintiffs do not reiterate this objection in response to defendants' SUMF including this admission, OSUMF ¶ 54, and moreover, this objection provides no evidentiary basis upon which the admission would be inadmissible at trial. Fed. R. Civ. P. 56(2); Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue.").

T.R. Dep., **ECF No 74-6**, Ex. E, at 22:1-3, 31:15-17; UMF ¶¶ 16-17. T.R. testified that, "[y]es," Z.Z. "said sorry to [her] after he accidentally hit [her] with the golf putter. . . ." T.R. Dep., **ECF No 74-6**, Ex. E, at 36:11-13; UMF ¶ 16-17. Plaintiffs attempt to counter this testimony by describing how Christopher Roelke, upon arriving at the green, *had the impression* that Z.Z. "was aggressively swinging a golf club . . . like swinging a samurai sword." C. Roelke Dep., **ECF No. 74-4**, Ex. C, at 60:3-4; UMF ¶ 18.[6] Yet T.R. was the only witness to the putter swing that caused her injury, and by T.R.'s own testimony, Z.Z. was swinging the club in the normal course of playing mini golf to put the ball into the hole. UMF ¶¶ 16-17. Z.Z. hitting T.R. with the kids' putter was an accident that occurred in the ordinary course of childhood play.

Under Puerto Rico law, these facts and admissions permit the Court to hold that, as a matter of law, defendants were not negligent in supervising, educating, and disciplining Z.Z, and that no reasonable juror could find otherwise. *Rivera*, 73 P.R. Dec. 682 (P.R. 1952), **ECF No. 85-2** (cert. trans.), at 5. Thus, the Court holds that, because defendants adequately supervised, educated, and disciplined Z.Z., and the incident occurred in the course of ordinary childhood play, no liability can attach under Article 1803.

---

[6] This statement is not conclusive and constitutes an "after-the-fact" impression. Moreover, it is clear that, after the incident, plaintiffs and TR remained at the party for hours without experiencing fear or encountering disputes among the minors, and the incident between Z.Z. and T.R. being perceived as an accident. *See* SUMF ¶¶ 33, 35; OSUMF ¶¶ 33, 35. In fact, T.R. "played with her sister, danced and had cake and sang karaoke" after the accident occurred. K. Roelke Dep., **ECF No. 74-2**, Ex. A, at 72:10-12.

## IV.    Conclusion

The Court finds that plaintiffs have failed to make out a case of negligence under Article 1802, and that defendants have rebutted the *juris tantum* presumption of fault under Article 1803. Accordingly, and for the reasons stated above, the Court **GRANTS** defendants' motion for summary judgment at **ECF No. 74**.

The Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 4th day of March, 2026.

                                      **S/AIDA M. DELGADO-COLÓN**
                                      **United States District Judge**